IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
MARVIN C. B.,                   )
                                )
          Plaintiff,            )
                                )
     v.                         )    1:22CV261
                                )
KILOLO KIJAKAZI,                )
Acting Commissioner of Social   )
Security,                       )
                                )
          Defendant.            )
```

### MEMORANDUM OPINION AND ORDER
### OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Marvin C. B., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) The Commissioner has filed the certified administrative record (Docket Entries 8, 9, 14 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 15, 18; see also Docket Entry 16 (Plaintiff's Memorandum); Docket Entry 19 (Commissioner's Memorandum)). For the reasons that follow, the Court will enter judgment for the Commissioner.[1]

---

[1] On consent of the parties, this "case [wa]s referred to [the undersigned] United States Magistrate Judge [] to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings therein." (Docket Entry 12 at 1.)

# I. PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 358-61), alleging a disability onset date of July 1, 2011 (see Tr. 358). Upon denial of that application initially (Tr. 137-48, 191-94) and on reconsideration (Tr. 149-66, 196-200), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 201-02). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing (Tr. 39-87), at which Plaintiff amended his onset date to May 30, 2014, the last day he worked (see Tr. 15, 44-45, 477, 1365).[2] The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 167-81.) The Appeals Council thereafter granted Plaintiff's request for review (see Tr. 187-90, 241, 483-84), on the basis of Plaintiff's "challenge under the Appointments Clause of the Constitution, U.S. Const. Art. II, § 2, cl. 2, to the manner in which the [ALJ] was appointed" (Tr. 188), and "remanded [the case] to a different [ALJ]" (id.).

A new ALJ held a hearing, which Plaintiff, his attorney, and a new VE attended. (Tr. 1359-96.) Following that hearing, the ALJ found Plaintiff not disabled under the Act (Tr. 12-32), and the Appeals Council later denied Plaintiff's request for review (Tr. 1-6, 355-57), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

---

[2] The transcript of this hearing before the ALJ appears in the record before the Court twice. (See Tr. 39-87, 88-136.) When referencing the contents of that hearing, this Memorandum Opinion will cite only to page numbers in the first instance of the hearing transcript in the record.

2

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

1.   [Plaintiff] met the insured status requirements of the . . . Act through June 30, 2019.

2.   [Plaintiff] did not engage in substantial gainful activity during the period from his amended alleged onset date of May 30, 2014, through his date last insured of June 30, 2019.

. . .

3.   Through the date last insured, [Plaintiff] had the following severe impairments: grade I lumbar spine spondylolisthesis; obesity; anxiety; and borderline intellectual functioning.

. . .

4.   Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5.   . . . [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform light work . . . except he would have the following limitations: standing for 6 hours and walking for 4 hours in a normal workday; frequently reaching overhead to the left and to the right; frequently climbing ramps and stairs, and occasionally climbing ladders, ropes and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; occasional exposure to unprotected heights; frequent exposure to moving mechanical parts; frequent operation of a motor vehicle; frequent exposure to weather, humidity and wetness, dust, odors, fumes and pulmonary irritants; occasional exposure to extreme heat, extreme cold, and vibration. Additionally, [Plaintiff] would be able to perform simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work); able to perform simple work-related decisions in the exercise of judgment; able to interact with supervisors frequently; able to interact with coworkers frequently; able to interact with the public

occasionally; and able to make simple work-related decisions in dealing with changes in the work setting. Finally, [Plaintiff]'s time off task can be accommodated by the performance of simple, routine and repetitive tasks.

. . .

6. Through the date last insured, [Plaintiff] was unable to perform any past relevant work.

. . .

10. Through the date last insured, considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [he] could have performed.

11. [Plaintiff] was not under a disability, as defined in the . . . Act, at any time from May 30, 2014, the amended alleged onset date, through June 30, 2019, the date last insured.

(Tr. 17-31 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

4

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to

5

whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).³ "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in

---

³ The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

6

addition to [the claimant's] medical condition."  Id.  "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled."  Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps:  "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work."  Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry.  For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.'  If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied."  Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled."  Mastro,

---

[4] "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [government] . . . ."  Hunter, 993 F.2d at 35 (internal citations omitted).

270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[6]

---

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[6] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a

8

## B. Assignment of Error

In Plaintiff's first and only issue on review, he maintains that "[t]he ALJ erred by failing to make findings as to how much time Plaintiff would be off task in the RFC." (Docket Entry 16 at 4 (bold font and single-spacing omitted).) More specifically, Plaintiff faults the ALJ for finding in the RFC that "'[Plaintiff]'s time off task can be accommodated by the performance of simple, routine and repetitive tasks [('SRRTs')]'" (id. (quoting Tr. 23)), because "the [United States Court of Appeals for the] Fourth Circuit [has] explained [ that ] being off task and a task being simple are not synonymous" (id. (citing Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015))). Plaintiff additionally notes that a case from the United States District Court for the Western District of North Carolina found similar language in an RFC "problematic" and grounds for remand under Mascio. (Id. at 5 (citing Henderson v. Saul, No. 1:18CV338, 2020 WL 261243, at *4 (W.D.N.C. Jan. 16, 2020) (unpublished)).) According to Plaintiff, "the record contains ample evidence that [Plaintiff] would be off task during a workday, as the ALJ admitted." (Id. at 6; see also id. at 6-15 (detailing record evidence Plaintiff believes demonstrates that his borderline intellectual functioning, leg and back pain, poor sleep, and

---

claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

anxiety/panic attacks would result in off-task time (citing Tr. 416, 423, 441, 446, 451, 508-09, 511, 519-21, 523, 533-34, 546, 568, 571, 584, 589-90, 592, 602, 605, 608, 634-37, 643-47, 655, 662, 726, 733, 817, 993-94, 999, 1014-15, 1018-19, 1024-26, 1029-30, 1034-35, 1038-40, 1048-52, 1059, 1061, 1065, 1082-83, 1085-87, 1095-97, 1110-11, 1117, 1124-25, 1127, 1131-33, 1135, 1141, 1143-44, 1146, 1148-50, 1152, 1154, 1231-34, 1236, 1240, 1242, 1344-45, 1366, 1370-71, 1374, 1376-78, 1382, 1387-88)).) Plaintiff thus contends that "the ALJ's decision must be vacated with a remand for further proceedings so that a proper assessment of [Plaintiff]'s time off task can be undergone." (Id. at 15.) For the reasons explained in more detail below, Plaintiff's contentions lack merit.

As an initial matter, Plaintiff provides no authority for the proposition that Mascio (or any other binding or persuasive authority) required the ALJ to quantify either the duration or the frequency of Plaintiff's off-task time in the RFC. (See Docket Entry 16.) In Mascio, the Fourth Circuit held "that an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace [('CPP')] by restricting the hypothetical question to simple, routine tasks or unskilled work,'" because "the ability to perform simple tasks differs from the ability to stay on task[, and o]nly the latter limitation would account for a claimant's limitation in [CPP]." Mascio, 780 F.3d at 638. However, as a neighboring district court has explained:

10

> Mascio does not broadly dictate that a claimant's moderate impairment in [CPP] _always_ translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . . An ALJ may account for a claimant's limitation with [CPP] by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Jones v. Colvin, No. 7:14CV273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (unpublished) (magistrate judge's recommendation adopted by district judge) (emphasis added); see also Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020) (noting that Mascio "did not impose a categorical rule that requires an ALJ to always include moderate limitations in [CPP] as a specific limitation in the RFC"); Mascio, 780 F.3d at 638 ("Perhaps the ALJ can explain why [the plaintiff's] moderate limitation in [CPP] at step three does not translate into a limitation in [her RFC]."). Thus, Mascio does not even require ALJs to always include a limitation in the RFC to account for a moderate limitation in CPP, let alone require them to quantify the duration/frequency of off-task time.[7]

---

[7] Henderson also does not hold that ALJs must quantify time off-task in the RFC. In that case, the court found that the ALJ's RFC limitations to SRRTs and occasional interaction with the public, as well as the statement that "the [plaintiff]'s time off task c[ould] be accommodated by normal breaks," did not sufficiently account for the plaintiff's moderate limitation in CPP under the circumstances of that case. Henderson, 2020 WL 261243, at *4. That court did not hold that the ALJ erred by failing to quantify the plaintiff's time off-task. See id. Moreover, although Plaintiff does not raise a broader argument under Mascio that the ALJ failed to properly account for his moderate deficit in CPP in the RFC (see Docket Entry 16 at 4-15), the Court notes that such an argument, if raised, would fail. Here, the ALJ's preclusion of work involving "a production rate pace (e.g. assembly line work)" in the RFC (Tr. 23 (bold font omitted)) "reasonably related to a moderate limitation in Plaintiff's ability to

11

Significantly, Plaintiff neither suggests what frequency and/or duration of off-task time the ALJ should have included in the RFC (see Docket Entry 16 at 4-6, 15), nor contends that his impairments caused disabling levels of off-task time (see id. at 4-15), which undermines his arguments, see McGillem v. Kijakazi, No. 20-2912, 2022 WL 385175, at *4 (7th Cir. Feb. 8, 2022) (unpublished) (finding no basis for remand, in part, because "[the plaintiff] d[id] not state what (if any) further restrictions would be appropriate," in that "[h]e refer[red] generally to time off-task and the need for frequent unpredictable breaks, but he d[id] not quantify th[o]se limitations or show why they [we]re work-preclusive").

Instead, Plaintiff merely argues that the ALJ's finding indicates that Plaintiff experienced some off-task time (see Docket Entry 16 at 4, 5, 15) and that, without VE testimony regarding employer tolerances as to off-task time, "we have no reference point from which to ascertain what frequency and for what duration of time off task would be allowed for competitive employment" (id.

---

stay on task," Grant v. Colvin, No. 1:15CV515, 2016 WL 4007606, at *6 (M.D.N.C. July 26, 2016) (unpublished), recommendation adopted, slip op. (M.D.N.C. Sept. 21, 2016) (Osteen, C.J.). Furthermore, the ALJ assigned "significant weight" to the consultative psychological examiner's opinion that, despite Plaintiff's subjective complaints of a slow pace and not completing tasks at times (see Tr. 643), Plaintiff remained able to "sustain attention to perform simple, routine tasks" (Tr. 646). Notably, the Fourth Circuit has rejected a Mascio claim where the ALJ's crediting of "[t]he opinions of [a consultative psychological examiner and a state agency psychological consultant that the plaintiff remained able to stay on task to perform simple tasks] provided substantial support for the ALJ's finding that, despite [the plaintiff]'s overall moderate difficulties with [CPP], he would nonetheless be able to stay on task" to perform simple, non-production work. Sizemore v. Berryhill, 878 F.3d 72, 81 (4th Cir. 2017).

12

at 6).  Plaintiff's argument, however, glosses over two pertinent facts.  First, the ALJ expressly asked the VE about the impact on available work if a "hypothetical individual['s ] ability to understand, remember, and carry out instructions[] would require frequent correction, redirection, and who[se] time off task would be the frequent correction and redirection."  (Tr. 1394.)  In response, the VE testified that such a limitation would preclude all available work.  (See id.)  Thus, the VE's testimony clarified that <u>frequent</u> off-task time for redirection and correction in following instructions, i.e., <u>from one-third to two-thirds of the workday</u>, <u>see</u> 20 C.F.R. § 404.1567 (reflecting that SSA has adopted definition in <u>Dictionary of Occupational Titles</u> ("<u>DOT</u>") of "frequent"); <u>see also</u> <u>DOT</u>, App'x C ("Components of the Definition Trailer"), § IV, 1991 WL 688702 (4th ed. rev. 1991) (defining "[f]requently" as "activity or condition exists from [one third] to [two-thirds] of the time"), would preclude competitive employment.  Second, to the extent Plaintiff wished to obtain further clarification of employer tolerances for off-task time, he (through his attorney) could have cross-examined the VE regarding such a matter, but failed to do so.  (<u>See</u> Tr. 1394-95.)  Plaintiff cannot fault the ALJ for Plaintiff's own omissions.

  Moreover, the circumstances of the ALJ's decision make clear that, by finding that the performance of SRRTs accommodated Plaintiff's off-task time (<u>see</u> Tr. 23), the ALJ signaled that

13

Plaintiff's mental symptoms and pain caused him to suffer <u>some</u> off-task time, but not enough to qualify as <u>disabling</u>. At step three of the SEP, the ALJ provided the following analysis supporting his assignment of a moderate limitation in CPP:

> With regard to [CPP], [Plaintiff] had a moderate limitation. [<u>Plaintiff] reported that he is able to pay attention for an unlimited length of time</u>, but has difficulty retaining information; he is <u>able to complete tasks</u> that he starts; and he is <u>able to follow instructions well</u>. On examination with Dr. Salomon, [Plaintiff] made two errors on calculations, and Dr. Salomon opined that [Plaintiff] <u>did not appear distracted</u> and would be <u>capable of sustaining attention necessary to perform simple, repetitive tasks</u>. Additionally, [Plaintiff]'s mental status examination findings in medical appointments include[] <u>intact recent and remote memory, and normal attention and concentration</u>. In light of [Plaintiff]'s allegations, his performance in mental status examinations, and [consultative psychological examiner Mark I. Salomon, M.A.]'s conclusions, the [ALJ] finds that [Plaintiff] has moderate limitation in [CPP].

(Tr. 20 (emphasis added) (internal parenthetical citations omitted).)[8] Considering the totality of the ALJ's decision, the Court can meaningfully review the ALJ's finding that Plaintiff's mental impairments and pain caused him to experience <u>some</u> off-task time, but that this off-task time would not prevent him from sustaining the performance of non-production SRRTs with limited interaction throughout a workday. See <u>Conti Sutherland v. Saul</u>, No. 5:19CV551, 2021 WL 1026947, at *4 (E.D.N.C. Mar. 17, 2021) (unpublished) ("Where . . . the ALJ explicitly relied on a medical

---

[8] Supervising Psychologist Dr. Charles Kron Berg also signed Mr. Salomon's consultative report (<u>see</u> Tr. 647).

14

source's evaluation of [the] plaintiff's ability to stay on task, where substantial evidence supports that evaluation, and where the ALJ connected that evaluation to the RFC, the ALJ's failure to expressly quantify the number of hours or days that [the] plaintiff can work does not require remand.").

### III. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 15) is denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 18) is granted, and that this action is **DISMISSED** with prejudice.

                                    /s/ L. Patrick Auld
                                  **L. Patrick Auld**
                          **United States Magistrate Judge**

August 8, 2023